**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:12-cv-81406

**DONNA JANE WATTS,**

     Plaintiff,

v.

**CITY OF PALM BEACH GARDENS**,
et al.,

     Defendants.

_____/

**MOTION TO DISMISS**
**OF DEFENDANTS JONES, BAILEY and BRIERTON**

Julie L. Jones, the Executive Director of the Florida Department of Highway Safety and

Motor Vehicles; Gerald Bailey, commissioner of the Florida Department of Law Enforcement;

and Colonel David H. Brierton, Jr., Florida Highway Patrol Director, move to dismiss the

complaint pursuant to Fed.R.Civ.P. 12(b)(6).

**NATURE OF THE CLAIMS**

In October 2011, the plaintiff, a Florida Highway Patrol trooper, pursued and arrested a

Miami police officer for driving recklessly at speeds as high as 120 mph on I-95. DE 1 para. 170.

The arrest received considerable media attention, and starting shortly afterward, the

plaintiff alleges, law enforcement officers around the state began accessing driver license

information about her collected by the Department of Highway Safety and Motor Vehicles

(DHSMV) through a restricted portal to the driver license data base known as DAVID. This

portal is used by law enforcement officers in the state to access such information for public

safety and law enforcement purposes pursuant to the state's police power in maintaining public

1

safety on the state's roads. DE 1 para. 156-157. From October 2011 to January 19, 2012, the plaintiff alleges that more than 88 Florida law enforcement officers accessed her personal driver information more than 200 times. DE 1 para. 185. She asserts that these officers had no law enforcement reason for doing so.

The plaintiff alleges that as a result of the fact officers obtained "her home address, color photograph or image, social security number, date of birth, state of birth, detailed vehicle registration information and description, prior and current home and mailing addresses," DE 1 para. 155, she was the target of numerous incidents of harassment. DE 1 pp. 32-33. However, she does not identify anyone responsible.

The plaintiff sues more than one-hundred law enforcement officers and police departments for obtaining her personal driver information for non-law enforcement purposes, and she sues Defendants Jones, Bailey and Brierton essentially for failing to prevent those officers from obtaining her driver information for a non-law enforcement purpose.

This, she contends, violated the federal Driver Privacy Protection Act (DPPA), 18 U.S.C. ss. 2721 et seq., which imposes strict limitations on the states' ability to use commercially specified information collected pursuant to the state police power; her federal and state rights to privacy; and her Fourth Amendment right to be free from unreasonable search and seizure.

As explained below, the plaintiff's claims fail as a matter of law because:

- Congress lacks the power under the Commerce Clause to regulate the use of state information that is not "in commerce." The use made by individual law enforcement officers accessing the plaintiff's driver information through DAVID — essentially just looking at it — did not place that information "in commerce" such that Congress could constitutionally regulate its disclosure under DPPA, since such use did not constitute economic activity.

- Congress' attempt to regulate the use of state driver information that is collected and used for public safety purposes and that is not in commerce interferes with the core sovereignty of the state in violation of the Tenth Amendment.

2

- The complaint fails to allege sufficient facts to make out a plausible case for a violation of the plaintiff's rights.

- The complaint is an impermissible shotgun pleading.

- The plaintiff has failed to allege the elements of a DPPA cause of action against Defendants Jones, Bailey and Brierton.

- The plaintiff has no reasonable expectation of privacy in information in the hands of a third party, as here, and thus no protected Fourth Amendment interests.

- The plaintiff has no federal privacy rights in driver information collected by Florida.

- Florida constitutional law does not recognize any protected privacy interest in information held by the state which is public record; driver information is public record.

## DPPA'S ELEMENTS

The plaintiff's core claim is for a violation of DPPA.

Congress enacted DPPA in 1994 not out of concern for the use of driver information in commerce, but in reaction to the murder of an actress in Southern California, who was killed by a stalker who allegedly found her through her driver record. *Pilcher v. UNITE,* 542 f.3D 380, 400 (3d Cir. 2008). Sloviter, J., dissenting; 140 Cong. Rec. 7,924–25 (1994).  See also 139 Cong. Rec. 29,466 (1993); *Senne v. Village of Palatine,* 695 F.3d 597, 607 (7th Cir. 2012).

The act prohibits the release of an individual's personal information contained in "motor vehicle records," which are "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. s. 2725(1). "Personal information" means "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. s. 2725(3).

3

DPPA prohibits state officials from knowingly disclosing or otherwise making available to any person or entity personal information protected under DPPA. 18 U.S.C. ss. 2771(a), 2722(a). It is also unlawful to obtain driver information for a purpose not permitted by DPPA. 18 U.S.C. s. 2722(b).

The act, however, contains exceptions in which state officials may release personal information. For instance, s. 2721(b) states that personal information "shall be disclosed for use in connection with matters of motor vehicle or driver safety . . ." And s. 2721(b)(1) allows disclosures:

> For use by any governmental agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

18 U.S.C. s. 2721(b)(1).

It is unlawful to falsely represent the reason for requesting personal information. 18 U.S.C. s. 2722(b).

Congress provided aggrieved individuals whose personal information had been released in violation of DPPA with a private right of action against the individuals responsible for the release and those who obtained the information. 18 U.S.C. s. 2724(a):

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

Any person violating DPPA can be liable for actual damages or liquidated damages up to $2,500, and punitive damages.

Congress made clear, however, that aggrieved individuals cannot sue a state or a state agency for a DPPA violation. 18 U.S.C. s. 2725(2) (defining person to exclude a state or state agency). Only the federal government can sue a state or state agencies. 18 U.S.C. s. 2723(b).

## ARGUMENT

I. **CONGRESS LACKS THE POWER TO DICTATE HOW A STATE MAKES DRIVERS' PERSONAL INFORMATION AVAILABLE TO ITS LAW ENFORCEMENT COMMUNITY WHEN NO INTERSTATE COMMERCE IS INVOLVED.**

Congress passed DPPA pursuant to its power under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, in order to regulate the disclosure and use of drivers' personal data as "things in commerce." The plaintiff seeks relief under a provision of the act that is beyond Congress's authority over interstate commerce, because here the act regulates entirely noncommercial sharing of drivers' personal information within a state's law enforcement community. This provision exceeds Congress's enumerated powers under the Commerce Clause because the information at issue is not a thing in commerce under the facts alleged in the complaint; and DPPA under these circumstances runs afoul of the Tenth Amendment.

### A. **DPPA was enacted by Congress pursuant to its commerce power.**

The Supreme Court concluded in *Reno v. Condon*, 528 U.S. 141 (2000), that DPPA was a valid exercise of the commerce power. However, the case involved a different provision of the law — one limiting disclosure for the purpose of bulk mail advertising — than the one at issue in this case, and different facts. . *Id.* at 143-145, 148.[1] Thus, *Reno* is only helpful for the general

---

[1]     The Court further underscored the commercial context of the driver data as the basis for congressional authority by noting:

The motor vehicle information which the States have historically *sold* is *used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce* to contact drivers with customized solicitations. The information also

proposition that Congress enacted DPPA pursuant to its commerce power. *Reno* does not control on the question presented in this case: is driver information in commerce when a law enforcement officer using a channel restricted to law enforcement functions improperly obtains driver information for a non-commercial purpose such that penalization of that access is within Congress' powers under the Commerce Clause? Because the information in this situation is not in commerce, the answer must be no.

It is beyond dispute that the Court's holding in *Reno* that DPPA is constitutional was based on the assumption that the driver information subject to the Act is a "thing in interstate commerce" that is being "sold" for use in the private sector by private businesses. It is "in this context" that the "sale or release" of the information "into the interstate stream of business" was deemed "sufficient to support congressional regulation."

The defendants do not dispute that the commerce power extends to States insofar as they sell or offer to sell driver information. Their point is that the commerce power cannot supply the authority to legislate in the context presented here, where the state makes driver information available to state law enforcement agencies pursuant to its police power, even if law enforcement officers who access that information may do so for non-law enforcement and non-economic reasons. In short, Defendants Jones, Bailey and Brierton cannot be held accountable under *federal law* if law enforcement officers improperly access driver information. That is a state matter that should, under our federal system, be addressed by state law.

---

is used *in the stream of interstate commerce by various public and private entities* for matters related to interstate motoring. Because drivers' information is, *in this context*, an article of commerce, *its sale or release into the interstate stream of business* is sufficient to support congressional regulation.

*Id.* at 148 (emphasis added).

**B.** **Congress's commerce power is limited and does not extend to things that are not in interstate commerce or substantially related to interstate commerce — that is, things that do not involve economic activity.**

Congress' power to regulate under the Commerce Clause is restricted to matters involving economic activity. Absent economic activity, Congress has no power to legislate.

In *Nat'l Fed'n of Indep. Bus. v. Sebelius*, – U.S. –, 132 S. Ct. 2566 (2012), (*NFIB*) the United States Supreme Court recently reaffirmed the principle that the Commerce Clause has significant limits that cannot be ignored, when the Court held that the requirement that most Americans must obtain qualifying healthcare coverage (the Individual Mandate) under the federal Patient Protection and Affordable Care Act of 2010 to be a valid exercise of Congress's power to tax and spend, U.S. Const. art. I, § 8, cl. 1 (a power not implicated in the instant action).

Notably, a majority of the Justices expressly rejected the contention that the Individual Mandate was constitutional under the Commerce Clause, even as augmented by the Necessary and Proper Clause, *id.* at cl. 18. *See NFIB*, 132 S. Ct. at 2585-93 (Roberts, C.J.) and 2644-50 (four-Justice dissent).[2]

Chief Justice reaffirmed the longstanding principle that the federal government is one of only limited, specifically enumerated powers and that those not expressly granted to the federal government remained with the states and the people; and that, for Congress to act, it "still must show that a constitutional grant of power authorizes each of its actions." *NFIB*, 132 S. Ct. at 2577-78.  Thus, Congress may act only pursuant to its powers as enumerated in the Constitution.[3]

---

[2]  The Chief Justice expressly declared his opinion to be in accord with the dissent's opinion as regards the restrictions on the Commerce Clause's reach.  *Id.* at 2593.

[3]  *See also, e.g., Dorr v. United States*, 195 U.S. 138, 140 (1904) (it is "settled that the Constitution … is the only source of power authorizing action by any branch of the federal

One of Congress's enumerated powers is the authority to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art I, § 8, cl. 3. In *NFIB*, the Court, quoting its earlier opinion in *United States v. Morrison*, 529 U.S. 598 (2000), set forth the three areas to which Congress's commerce power extends:

> Our precedents read [the Commerce Clause] to mean that Congress may regulate "the channels of interstate commerce," "persons or things in interstate commerce," and "those activities that substantially affect interstate commerce." *Morrison*, *supra*, at 609, 120 S. Ct. 1740 (internal quotation marks omitted).

*NFIB*, 132 S. Ct. at 2578.

Although the reach of the commerce power has expanded, it continues to be subject to limits that must be observed lest Congress "everywhere extend[] the sphere of its activity and draw[] all power into its impetuous vortex." *See id. at 2589* (quoting The Federalist No. 48, at 309 (J. Madison) (C. Rossiter ed. 1961)).

The four-justice dissent in *NFIB*, in that portion of their opinion discussing the Commerce Clause (which, as noted, was declared by the Chief Justice to be in accord with his opinion), agreed with the Chief Justice's view of a commerce power that was subject to definite limits. *NFIB*, 132 S. Ct. at 2646.

Thus, for a regulation by Congress to pass muster under the commerce power, it must regulate either the channels of interstate commerce, things in interstate commerce, or activities that substantially affect interstate commerce. *NFIB*, 132 S. Ct. at 2578.

In *United States v. Lopez*, 514 U.S. 549 (1995), the Court dealt with the third, and arguably broadest, category for exercising Congress's commerce power: where activities have a

---

government."); *Ex parte Quirin*, 317 U.S. 1, 25 (1942) (Congress "possess[es] no power not derived from the Constitution."); *United States v. Butler*, 297 U.S. 1, 62-63 (1936).

8

substantial relation to interstate commerce.  In *Lopez*, the issue was the constitutionality of a federal law criminalizing possession of a firearm in a school zone. Underscoring the critical importance of a substantial nexus to interstate commerce — that is, *economic activity* — the Court held that Congress had exceeded its commerce power, because "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce."  514 U.S. at 567.

Similarly, in *United States v. Morrison*, 529 U.S. 598 (2000), the Court struck down a provision of the Violence Against Women Act because "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." 529 U.S. at 613.  It concluded: "We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617.

In *NFIB*, the majority rejected the "substantial relation" prong of the commerce power as a basis for upholding the Individual Mandate.  While that category empowers Congress to legislate as to activities having a substantial effect on commerce, the failure or refusal of persons to obtain healthcare coverage is not economic activity; rather, it is the absence of economic activity, and hence is not subject to regulation under the commerce power.  *See NFIB*, 132 S. Ct. at 2587.

Where, as in *Lopez, Morrison*, and *NFIB*, Congress seeks to extend its reach to matters not involving economic activity — to matters divorced from interstate commerce —  it has exceeded its constitutional powers.

**C.    Driver data obtained by state and local law enforcement agencies and officers are not "things in commerce," and such access has no effect on interstate commerce.**

When Florida makes driver information available to its law enforcement community pursuant to its police power, it is not engaged in economic activity that can be subject to Congress' regulation. Similarly, the mere fact that a law enforcement officer obtained the plaintiff's personal information for a non-law enforcement purpose, without more, does not constitute economic activity subject to federal regulation.

Consistent with the nature and limitations of the commerce power, DPPA's provisions should be construed to apply only in the context of such data being "things in commerce" — and not in the context of information being shared on a restricted basis among law enforcement agencies and officers. This follows because providing driver information to law enforcement officers does not involve placing driver information into commerce, and there is no reason to suppose that it might.  In that context — central to the exercise of the States' police power — the information is noncommercial in nature, and thus the second category of commerce power cannot sustain congressional legislation controlling such sharing at the state or local level.

The sharing of driver information within the law enforcement community has no effect on interstate commerce — much less the requisite "substantial effect" required for the third category of commerce power to support congressional action.

This is the case in Florida.  Florida law expressly allows access to driver and vehicle data by "any state agency, state attorney, sheriff, or chief of police[,]" but with the added restriction that "[s]uch … state agency, state attorney, or law enforcement agency *may not sell, give away, or allow the copying of such information*."  Fla. Stat. § 322.20(9) (emphasis added).  The open access to driver information for Florida's law enforcement agencies, coupled with the prohibition

on the agencies' sale or disclosure of such information, underscores that data sharing is internal within the law enforcement agencies and *noncommercial* in nature.

Thus, the disclosures complained of by the plaintiff had no connection with interstate commerce, the constitutional lynchpin of DPPA.  The plaintiff's driver information was not an article in commerce or intended — or allowed by state law — to be placed in commerce. The case is limited to these narrow facts, which do not support federal regulation.

The commerce power cannot give Congress a basis for controlling how driver information obtained by a state is shared within that state's law enforcement community.  Such matters are for the States to decide, in the exercise of their general police power — a power denied to the federal government under the Constitution.

**D.     Punishing Defendants Jones, Bailey and Brierton for an alleged failure to prevent the disclosure of the plaintiff's personal driver information violates federalism and the Tenth Amendment.**

"If a federal regulation ostensibly justified by the Commerce Clause unduly infringes on the general police power, a power that was never conferred on the national government, it follows that such regulation exceeds the limited federal power." *Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820, 903 (4th Cir. 1999) *aff'd sub nom. United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000), Neimeyer, J., concurring; *Printz v. United States*, 521 U.S. 898, 923 (1997) ("When a law ... violates the principle of state sovereignty ... it is not a law ... proper for carrying into Execution the Commerce Clause.").

The general police power rests at the core of state sovereignty; thus to read the Commerce Clause broadly so as to infringe significantly on the states' general police power undermines state sovereignty in violation of the federal structure created by the Constitution and confirmed by the Tenth Amendment. *Id.*; *Printz v. United States*, 521 U.S. 898, 918-919 (1997);

11

*Fed. Mar. Comm'n v. S. Carolina State Ports Auth*., 535 U.S. 743, 769, 122 S. Ct. 1864, 1879, 152 L. Ed. 2d 962 (2002); *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905) ("the State[s] did not surrender [their police power] when becoming [] member[s] of the Union under the Constitution."); *Lopez*, 514 U.S. at 566 ("The Constitution … withhold[s] from Congress a plenary police power"); *Morrison*, 529 U.S. at 618 ("Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims."); *NFIB*, 132 S. Ct. at 2578  ("Our cases refer to this general power of governing, possessed by the States but not by the Federal Government, as the "police power."). See also *Com. of Va. v. Browner*, 80 F.3d 869, 880 (4th Cir. 1996) ("Congress lacks power to impinge upon 'the core of sovereignty retained by the States.'").

Consequently, the Commerce Clause must be interpreted to preserve the federal structure of the Constitution and the states' general police power as an essential aspect of their sovereignty within that structure. *Printz, supra; Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d at 905, Neimeyer, J., concurring.

Florida's ability to regulate public safety on the state's roads springs from its general police power and is a core attribute of state sovereignty. "[T]he power to create and enforce a legal code, both civil and criminal is one of the quintessential functions of a State." *Diamond v. Charles,* 476 U.S. 54, 65 (1986); *Younger v. Harris,* 401 U.S. 37, 46 (1971) (right to formulate and enforce penal sanctions is an important attribute of state sovereignty); *Pryor v. Reno*, 171 F.3d 1281, 1288 (11th Cir. 1999) cert. granted, judgment vacated on other grounds, 528 U.S. 1111 (1999) ("Only States collect driver's license and motor vehicle information. This is an exercise of sovereignty. See *Peel v. Florida Dept. of Transp*., 600 F.2d 1070, 1083 (5th

Cir.1979) ( 'Overseeing the transportation system of the state has traditionally been one of the functions of state government, and thus appears to be within the activities protected by the tenth amendment')"); *United States v. Best*, 573 F.2d 1095, 1103 (9th Cir.1978) ("'[T]here is little question that the licensing of drivers constitutes 'an integral portion of those governmental services which the States and their political subdivisions have traditionally afforded their citizens'").

In addition, the state's ability to determine and to regulate its internal administration is equally a core attribute of state sovereignty. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)[4]; *Com. of Va. v. Browner,* 80 F.3d at 880 ("We also agree that an important aspect of a state's sovereignty is the administration of its judicial system.").

The management of state records is fundamental to a state's internal administration and thus a core element of state sovereignty. Yet, DPPA *overrides* state public records policy to the extent it purports to prohibit disclosures of Florida public records for noneconomic purposes, and dictates when and under what circumstances *state* records can be used, penalizing state officials should they violate the law.

Therefore, when DPPA penalizes Defendants Jones, Bailey and Brierton for the disclosure of state public records when the information is not an article in commerce and the disclosure does not involve economic activity, it violates the Tenth Amendment.

---

[4] "The present case concerns a state constitutional provision through which the people of Missouri establish a qualification for those who sit as their judges. This provision goes beyond an area traditionally regulated by the States; it is a decision of the most fundamental sort for a sovereign entity. Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign. 'It is obviously essential to the independence of the States, and to their peace and tranquility, that their power to prescribe the qualifications of their own officers ... should be exclusive, and free from external interference, except so far as plainly provided by the Constitution of the United States.' *Taylor v. Beckham,* 178 U.S. 548, 570-571, 20 S.Ct. 890, 898, 44 L.Ed. 1187 (1900)."

**II.**   **THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO MAKE OUT A PLAUSIBLE CASE FOR THE VIOLATION OF THE PLAINTIFF'S RIGHTS.**

The complaint relies on a flurry of conclusory allegations against the defendants that do not make out a plausible case for the violation of the plaintiff's rights.

While Fed.R.Civ.P. 8 requires only a short plain statement showing the pleader's right to relief, a complaint cannot rely on conclusory allegations. It must provide sufficient facts from which a court can conclude that the allegations against the defendant are facially plausible. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008); *Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control,* 623 F.3d 1371, 1381 (11th Cir. 2010); *Lawson v. City of Miami Beach*, 2012 WL 6155342 *2 (S.D. Fla. Dec. 11, 2012).

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." …. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." …. In other words, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element.

*Lawson v. City of Miami Beach*, 2012 WL at *2.

The complaint fails this test for Defendants Jones, Bailey and Brierton.

**A.**   **Defendants Jones and Bailey.**

The plaintiff alleges these specific things about Defendants Jones and Bailey in the body of the complaint:

| Paragraph | Allegation |
|---|---|
| 156 | The D.A.V.I.D system, to which access is limited and approved by the DHSMV, **under the direction of Jones**, and the FDLE, **under the direction of Bailey**, permits law enforcement personnel to search Florida driver licenses, identification cards, and license plates (tags) amongst other private and highly-restricted personal information. |
| 157 | DHSMV provides access to DAVID under **Jones'** direction. |
| 158 | The FDLE and FDLE Does, **under the direction of Defendant Bailey**, and the |

| Paragraph | Allegation |
|---|---|
|  | DHSMV, **under the direction of Defendant Jones**, provided access to the database that includes Plaintiff's driver's license information. |
| 159 | The FDLE and FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, had the ability to ascertain that driver's license information, including Plaintiff's, was being accessed on numerous occasions, by multiple law enforcement personnel from a variety of law enforcement agencies. |
| 160 | The FDLE and FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and DHSMV Does, **under the direction of Defendant Jones**, had the ability to prevent unauthorized access to Plaintiff's driver's license information |
| 161 | The FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, failed to prevent unauthorized access to the database including access to Plaintiff's driver's license information. |
| 162 | The FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disclosure of Plaintiff's driver's license information. |
| 164 | The FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, knowingly disclosed Plaintiff's and others' driver's license information and violated state policy by devising and implementing a database that failed abominably to uphold the privacy rights of Watts and others similarly situated as protected by the DPPA, exposing her information and others' to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit, constituting a knowing disclosure of her information within the meaning of the DPPA. |
| 165 | The FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, knowingly implemented a database, and a method for using and misusing that database, that both permitted and encouraged, through the nature and monitoring of the system, accesses by police officers, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA. |
| 166 | The system knowingly implemented by the FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, failed to set rules for protecting the privacy rights, and permitted, and on information and belief, still permits, and in some instances promotes, the accessing of the database from computers that are located in areas that are accessible to any individual, permitting continuous access to the database from a dedicated computer that does not require logging in by any individual, including persons not authorized to access the database, and the accessing of the system by persons without any accountability or even in some instances without the ability to trace the person who made the access; so that effective monitoring of the system is difficult if not impossible under the system as implemented by the FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the |

| Paragraph | Allegation |
|---|---|
| | DHSMV Does, **under the direction of defendant Jones,** who deliberately emphasized and favored the convenience of the system by users at the expense of protecting the privacy rights of the persons in the database. |
| 167 | Upon information and belief, the FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, actually knew that law enforcement officers were accessing the databases for impermissible purposes, including viewing Plaintiff's driver's license information, and acquiesced, facilitated, approved or simply ignored the conduct. |
| 168 | Even if the FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, had no actual knowledge of the impermissible uses of the databases they oversaw, upon information and belief, they were reckless in their supervision of their subordinates who did operate the database. |
| 169 | Upon information and belief, the FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, were grossly negligent in supervising their subordinates who operated on databases. |
| 266 | This failure to monitor whom is accessing the private driver's license information of persons in the state of Florida is not only egregious but clearly shows that FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, are improperly monitoring the law enforcement agencies. |
| 323 | On information and belief, Defendant Entities, Defendant Supervisors, the FDLE and FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, permitted, condoned, or acquiesced in this illegal access to Plaintiff's private information, and knew or should have known that it was occurring. |
| 325 | Defendant Entities, Defendant Supervisors, the FDLE and FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, have lax policies or lax enforcement of these policies that allow for these intrusions. |
| 326 | Defendant Entities, Defendant Supervisors, the FDLE and FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, either have no viable method or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers. |

In *Count 1* (for DPPA violations), the plaintiff adds these allegations naming Defendants

Jones and Bailey:

16

- Para. 347 – "The FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, knowingly disclosed Watts private information personal information for purposes not permitted under DPPA."

In addition, the plaintiff alleges violations by "supervisor defendants." DE 1 para. 352[5], 355[6]. However, it is unclear whether the plaintiff includes Defendant Jones or Bailey in that group, and there is reason to doubt that she does, though the careful reader cannot be sure. The plaintiff defines "supervisor defendants" in a way that excludes them: "The Supervisor Defendants, up to and including the Chief of Police, Sheriff, and Mayor, employed by each Entity Defendant, are liable in their capacity." DE 1 para. 378, 379.  Neither Jones nor Bailey is a chief of police, sheriff, or mayor, nor is she employed by any entity defendant. They are employed by state agencies which are not sued in this case (and could not be sued) and therefore are not entity defendants.  DE 1 para. 60.

*Count 2* is against "individual defendants" only, a category in which Defendants Jones and Bailey are excluded. See DE 1 para. 56.

*Count 3* (a civil rights claim for failure to monitor) sues supervisors, a category that apparently excludes Defendants Jones and Bailey. DE 1 para. 378, 379. Nothing in the count

---

[5] 352 – "The Entity Defendants and Defendant Supervisors knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Watts' private personal information by the Individual Defendants."

[6] 355 – "The Individual Defendants, **Supervisor Defendants** and Entity Defendants each willfully and recklessly disregarded the law, entitling Watts to punitive damages under DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Florida state law as set forth in Fla. Sta. § 768.72. The plaintiff is entitled to actual, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C.  s. 2724(6)."

specifically names Defendants Jones or Bailey, or states facts as to what they allegedly did to violate the plaintiff's constitutional rights.

*Count 4* (for alleged Fourth and Fourteenth Amendment violations) names Defendants Jones and in several paragraphs:

- Para. 396 — Jones and Bailey are responsible for providing access to driver license data bases.

- Para. 397 — Jones and Bailey were able to determine if unauthorized access was made to DAVID and to prevent it.

- Para. 398 — Jones and Bailey failed to prevent unauthorized access.

- Para. 401 — Jones allowed unauthorized access to the plaintiff's driver records over a three month period.

- Para. 400 — Jones and Bailey created and oversaw the creation and maintenance of a system that was supposed  to prevent unauthorized access.

- Para. 401 — Jones and Bailey allowed unauthorized access.

- Para 402 — Jones' and Bailey's efforts have been insufficient to prevent unauthorized access.

- Para. 403 — Jones and Bailey sanctioned constitutional violations through the failure to remedy the policy, custom and practice of officers' unfettered and unauthorized access to the drive license database.

- Para. 404 — Jones and Bailey were grossly negligent in supervising subordinates responsible for implementing database that prevents unauthorized access.

- Para. 405 — Jones and Bailey failed to monitor and prevent unauthorized access even though she knew or should have known such unconstitutional acts were occurring.

- Para. 406 — Jones and Bailey were deliberately indifferent to P's constitutional right to be free from illegal searches and seizures.

*Count 5* (state tort invasion of privacy) fails to name Defendant Jones, Bailey or Brierton. It refers generically to "defendants" and conclusorily alleges that these defendants obtained the plaintiff's driver information. There is no specific allegation that Defendant Jones, Bailey or Brierton obtained such information, however.

The defects in these allegations become apparent when they are extracted from the confusion of a sprawling 69-page complaint alleging violations by 128 identified defendants and a host of unnamed ones. The primary contention against Defendants Jones and Bailey is that their agencies acted under their direction. As they are the agency directors, that is theoretically true. But to make such boilerplate, conclusory allegations against them does not state sufficient facts from which the court can plausibly infer that they were personally responsible for a violation of the plaintiff's rights. Such an allegation, for instance, does not support a claim that Jones or Bailey directed DHSMV employees to disclose the plaintiff's driver information, or that she was responsible for a failure to monitor access to the driver license database merely because the department operates under her overall direction. See DE 1 para. 347, 323. Nor do the claims, in count 1, for example, support an allegation that their defendant knowing disclosed protected information — as the allegations are drafted, it alleged knowing disclosure by Highway Safety and the Florida Department of Law Enforcement, not by the individual defendants.

As for the allegations concerning "supervisor defendants," the way that the plaintiff has defined the term does not give Defendants Jones and Bailey fair notice that they fall within that group. Fair notice is the purpose of Rule 8. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d at 974.

Nor do the blanket allegations against "defendants" in count 5 give Defendants Jones and Bailey fair notice of how she violated the plaintiff's state privacy rights.

As to the allegations in count 4, they are conclusory as well. Nothing in the complaint or in count 4 in particular cites specific facts that show *how* Defendants Jones and Bailey violated the plaintiff's Fourth Amendment rights — that is, how Jones or Bailey allowed unauthorized access, how their efforts to prevent unauthorized access were insufficient, how they sanctioned the alleged constitutional violations, how they were grossly negligent, how they failed to monitor and prevent unauthorized access, and how they were deliberately indifferent to the plaintiff's constitutional rights. See e.g., *Foster v. Jeter,* 2012 WL 6645010 *4 (M.D. Fla. 2012); *Hurst v. State Farm Mutual Automobile Insurance Co.,* 2012 WL 426018 *5, 11 (D. Del. 2012) ("The complaint does not contain any factual allegations that plausibly suggest that the defendants accessed Hurst's DMV records 'for a purpose not permitted under'" DPPA.).

In sum, all allegations involving these two defendants are so conclusory that they cannot make out a plausible claim for relief.

### B.   Defendant Brierton.

The allegations against Defendant Brierton are even more threadbare than those against Defendants Jones and Bailey. In fact, the plaintiff mentioned Defendant Brierton ***only once*** by name, in paragraph 50 (where his name is misspelled). Nowhere in the complaint is there any allegation of what Defendant Brierton personally did to violate the plaintiff's rights.

The plaintiff may consider Col. Brierton to be an individual defendant; or she may think

he is a supervisory defendant. But it is not clear from anything in the complaint in which

category she thinks she has put him. Thus, he does not have fair notice, if he is lumped into

either of these categories.

Because the complaint fails to make to make specific allegations about Col. Brierton's

alleged bad acts, it is fatally defective. See *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974)

("Where a complaint alleges no specific act or conduct on the part of the defendant and the

complaint is silent as to the defendant except for his name appearing in the caption, the

complaint is properly dismissed...."); *Reeves v. Sidegg*, 2008 WL 5111204 (M.D. Ala. Dec. 3,

2008)  ("The amended complaint is devoid of any complaints or allegations against the other

named defendants because the plaintiff merely lists these individuals as defendants in his

complaint and does not allege that they were personally involved in the constitutional

violations.") ; *Richardson v. Leary*, 2008 WL 2131552 (M.D. Ala. Apr. 23, 2008) report and

recommendation adopted, 2008 WL 2131497 (M.D. Ala. May 20, 2008) ("A review of the

complaint reflects that the plaintiff's complaint makes only specific allegations against Officers

Leary, Chancey, Fritzgerald, and Buchman. The complaint is devoid of any complaints or

allegations against the other named defendants. The court, therefore, finds that the complaint, as

pled, does not support a cause of action against Defendants Hartley, Poke, Woods, Davis, Jones,

and medical staff.").

### C.    The complaint is an impermissible shotgun pleading.

Each count of the complaint incorporates all the previous allegations in the complaint[7] —

a practice known as a shotgun pleading. *McMahon v. Cleveland Clinic Found. Police Dept*., 455

---

[7] See complaint para. 340, 357, 369, 393, 410.

F. App'x 874, 877 (11th Cir. 2011). Shotgun pleadings should be dismissed because they fail to give a defendant adequate notice of the claims and make responding "virtually impossible." *Id.*

### III.   **DPPA** CLAIMS ARE MERITLESS.

DPPA creates a private cause of action having three elements: that a defendant 1) knowingly obtained, disclosed or used personal information, 2) from a motor vehicle record, 3) for a purpose not permitted by the law. 18 U.S.C.  s. 2724(2); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Sevens PA,* 525 F.3d 1107, 1111 (11th Cir. 2008).

Thus, the language, structure and congressional intent behind DPPA  require the plaintiff to allege facts sufficient to make out a plausible claim for relief on each specific element of the cause of action.

*First*, there must be a disclosure of protected information. The plaintiffs must allege that the defendant participated directly in the decision to disclose information — that is, the defendant had the authority to approve that disclosure and in fact exercised that authority. The plaintiffs cannot rely on the doctrines of respondeat superior or vicarious liability.

*Second*, the disclosure must be "knowing." This in part means the disclosure must be intentional and not accidental, negligent or inadvertent. But more than that, the plaintiff must also allege that the defendant knew that the plaintiff's protected information was being released and that the reason given by the recipient for wanting the information fell outside the permissible reasons for disclosure contained in 18 U.S.C.  s. 2721. *Parus v. Kroeplin,* 402 F.Supp.2d 999 (W.D. Wisc. 2005).

Congress did not define "knowingly" in DPPA. When Congress does not define the word, the Supreme Court has held that it means "merely proof of knowledge of the facts that constitute the offense." *Dixon v. U.S.*, 126 S.Ct. 2437, 2441 (2006).

The wording of s. 2724(a) indicates that Congress intended to apply the qualification of "knowingly" to all elements of a DPPA civil offense. That is, the defendant must know 1) he is disclosing protected information, and 2) the uses the requester proposes for information. This is so because "knowingly" is an adverb modifying the verbs obtain, disclose or use. These verbs then are each modified again by a subordinate clause "for a purpose not permitted under this chapter." The adverb, the verbs and the subordinate clause thus form a single, harmonious unit that is a clear and unambiguous expression of congressional intent.

The statutory language is similar to that at issue in *U.S. v. White*, 766  F.Supp. 873, 895 (E.D.Wash. 1991). In *White*, the court interpreted 42 U.S.C. s. 6928(d)(2), which states:

Any person who--

 (2) knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter

The *White*  court concluded that the statute "applies to anyone who knowingly treats, stores or disposes of any hazardous waste. The term knowingly modifies hazardous waste, as well as treats, stores or disposes of. *United States v. Hoflin*, 880 F.2d 1033, 1039 (9th Cir.1989). Accordingly, in that case, the government had to prove not only knowing treatment, storage or disposal of hazardous waste but also that the defendant knew the waste was hazardous."

Therefore, the plaintiff must allege that the defendant knew that the requester intended to use protected information for a purpose not permitted by DPPA. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Sevens PA,* 525 F.3d at 1111-1114; *Bailey v. Daniels,* 679 F.Supp.2d 713 (W.D. La. 2009).  "The Act imposes liability only on a defendant who 'knowingly' discloses information for an impermissible 'purpose.' So liability turns on what a

defendant knows and on the defendant's purpose." *Welch v. Theodorides-Bustle*, 753 F. Supp. 2d 1223, 1226 (N.D. Fla. 2010).

The plaintiff's allegations of recklessness and gross negligence[8] thus do not state a DPPA claim, since disclosures must be knowing. If recklessness or gross negligence in fact states a DPPA claim, the defendants are entitled to qualified immunity since the law is not clearly established on that point in this circuit.[9]

This reading is consistent with the legislative history of the act. See e.g., Bill Summary and Analysis, 103rd Congress, HR 3365, which says the bill prohibited "knowingly obtaining and using personal information, derived from a motor vehicle record, for any impermissible purpose . . ." As one can easily see, the drafters intended to impose liability for "knowingly obtaining and using" protected information for a use not permitted by the act.

*Third*, the reason given must be for a use not permitted by DPPA. But a defendant is entitled to reasonably rely on the reasons given by a requester. See e.g., *Williams v. Miami-Dade Police Department,* 297 Fed.Appx. 941, 946 (11th Cir. 2008) (law enforcement officers entitled to rely on statements by other officers absent any showing that they knew the statements were false); *Parus v. Kroeplin,* 402 F.Supp.2d  999, 1007 (W.D. Wisc. 2005). So if the requester said he wanted protected information for a reason permitted under s. 2721 (b), a defendant reasonably could rely on this representation. Where, as here, access to DAVID is restricted to law

---

[8] DE 1, para. 168, 169.

[9] Individuals sued under DPPA can assert the qualified immunity defense. *Collier v. Dickinson,*477 F.3d 1306 (11th Cir. 2007) (finding no basis for qualified immunity in that case because the law in question was clearly established); *Youmans v. Gagnon,* 626 F.3d 557 (11th Cir. 2010); *Lewis v. City of West Palm Beach,*561 F.3d 1288, 1291-1292 (11th Cir. 2009); *Trammell v. Thomason,* 335 Fed.Appx. 835, 841 (11th Cir. 2009) (rejecting argument that authority from other circuits establishes the law for qualified immunity purposes).

enforcement purposes, a defendant can reasonably rely on any access as made subject to that requirement.

Fourth, the plaintiffs must allege that protected information in fact was used for a purpose not permitted by DPPA.

As to DPPA claim, the plaintiff conclusorily alleges: "The FDLE and the FDLE Does, **under the direction of Defendant Bailey**, and the DHSMV and the DHSMV Does, **under the direction of Defendant Jones**, knowingly disclosed Watts private information personal information for purposes not permitted under DPPA." DE 1 para. 347.  The complaint alleges that *DHSMV and FDLE* knowingly disclosed the plaintiff's information, but fails to allege sufficient facts showing that Jones or Bailey personally disclosed it, or knew it was being released for an improper reason not within one of the exceptions of 18 U.S.C.  s. 2721.

Finally, if the complaint can be read to make out systemic violations by the defendants, (see DE 1, para. 266, 325, 326), the plaintiff lacks standing. Only the U.S. Attorney General has standing to bring actions for alleged systemic violations of DPPA. 18 U.S.C.  s. 2723(b).

The plaintiff makes no allegations at all about Defendant Brierton.

**IV.    COUNT 4 — FOR UNLAWFUL SEARCH AND SEIZURE AND INVASION OF PRIVACY UNDER THE FEDERAL CONSTITUTION — IS MERITLESS.**

Only Defendants Jones and Bailey are sued under Count 4.

**A.    The plaintiff has no protected Fourth Amendment interest in information held by DHSMV.**

The plaintiff alleges that Defendants Jones and Bailey violated her Fourth Amendment rights. DE 1 para. 399. Presumably, the plaintiff intends to make a claim for unlawful search and seizure. See DE 1 para 2.

DPPA confers limited privacy protections to information collected by state motor vehicle departments under their police power to regulate driving.[10] However, in such circumstances, the plaintiff has no protected Fourth Amendment rights in information held by a third party. *U. S. v. Miller*, 425 U.S. 435, 440-41 (1976); *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1116 (9th Cir. 2012).

If there in fact is such a protected interest here, the defendants are entitled to qualified immunity because the law is not clearly established on that point.

### B. The defendant has no constitutionally protected privacy interest in driver information collected by Florida.

The plaintiff proceeds under the Fourteenth Amendment for invasion of privacy. The claim is one essentially for violation of a right to informational privacy. However, the defendant is entitled to qualified immunity on this claim since the right is not clearly established. *Elkins v. Elenz*, 2012 WL 2952435 *2 (M.D. Fla. July 19, 2012). *See also NASA v. Nelson,* 131 S.Ct. 746, 764 (2011) (Scalia, J., concurring) ("a federal constitutional right to 'informational privacy' does not exist").

Moreover, assuming such a claim exists, the Constitution does not protect just any privacy interest: only those involving fundamental rights or that are implicit in the concept of ordered liberty. *J.P. V. DeSanti*, 653 F.2d 1080, 1090 (6th Cir.1981); *Burdine v. Pilliers*, 2008 WL 1859850 (E.D. Tenn. Apr. 23, 2008); *Mitchell v. Vogel*, 2010 WL 4595588 *2 (M.D. Fla. Nov. 3, 2010) ("The Constitution, however, does not encompass a general right of nondisclosure of all private information. Rather, the Constitution recognizes that the right to privacy is limited to certain fundamental rights that are implicit in the concept of ordered liberty.").

---

[10] *Pryor v. Reno*, 171 F.3d 1281, 1288 (11th Cir. 1999) cert. granted, judgment vacated on other grounds, 528 U.S. 1111 (1999);*United States v. Best*, 573 F.2d 1095, 1103 (9th Cir.1978).

Driver information is not so sensitive that it is entitled to constitutional protection. *Pryor v. Reno*, 171 F.3d at 1288 n. 10; *Walke v. Cullen*, 2012 WL 2512909 *2 (3d Cir. 2012) ("An officer's search of public records does not violate the constitutional right to privacy.")

Even if a right of informational privacy exists, the plaintiff has no reasonable expectation of privacy in driver information because it is subject to disclosure in a manner prescribed by Congress. *Wiles v. Ascom Transport System Inc.,* 478 Fed.Appx. 283, 294 (6th Cir. 2012).

**V.    THE PLAINTIFF HAS FAILED TO ALLEGE COMPLIANCE WITH THE NOTICE REQUIREMENTS OF S. 768.28.**

In Count 5, the plaintiff sues the Defendants Jones, Bailey and Brierton for the state tort of invasion of privacy.

This claim is defective because the plaintiff has failed to allege compliance with the notice provisions in s. 768.28, Fla. Stat., the state's limited waiver of sovereign immunity for tort actions. See *Woodburn v. State of Florida Dept. of Children & Family Services*, 854 F. Supp. 2d 1184, 1207-08 (S.D. Fla. 2011).

Consequently, the defendants are entitled to sovereign immunity on the state tort claims in count 5.

**VI.   COUNT 5 — THE PLAINTIFF'S STATE TORT CLAIM FOR INVASION OF PRIVACY — IS MERITLESS ON THE FACTS ALLEGED.**

In addition to the failure to plead compliance with s. 768.28, that statute does not waive sovereign immunity for tort actions against individual public officials unless the plaintiff alleges the official acted with malice. Absent an allegation of malice, the plaintiff can only sue the agency in tort. The plaintiff fails to allege that Defendants Jones, Bailey or Brierton personally

acted with malice[11]; therefore, her tort claim against them can only be maintained in state court against the Department of Highway Safety and Motor Vehicles or the Florida Department of Law Enforcement, which are not defendants.

Furthermore, the plaintiff has no claim for invasion of privacy for the disclosure of driver information from the DAVID system even if s. 768.28's requirements are met. The driver information in the DAVID system is public record and subject only to statutory protection under DPPA and related state law, and Florida law does not recognize an invasion of privacy claim stemming from the disclosure of public records.

That driver information in the DAVID system is public record is beyond dispute. See ss. 322.14 (defining what information is collected and displayed on drive licenses) and 119.01(1) and 119.011(12), Fla. Stat., stating that it is the state's public policy that all state records are open for public inspection and defining public records.

The State Constitution, Art. I, s. 23, Fla. Const., expressly deprives any information in a public record of privacy protection. *Michel v. Douglas*, 464 So.2d 545, 546 (Fla.1985); *Post–Newsweek Stations, Florida Inc. v. Doe*, 612 So.2d 549, 552 (Fla.1992) (The Florida Privacy Amendment does not "protect names and addresses contained in public records."); *Forsberg v. Housing Authority*, 455 So.2d 373 (Fla.1984) ("... section 23 specifically does not apply to public records ..."); *Borges v. City of W. Palm Beach*, 858 F. Supp. 174, 178 (S.D. Fla. 1993).

Any privacy rights pertaining to public records arise only from statute by way of an exemption from disclosure to the state public records law. *Alterra Healthcare Corp. v. Estate of Shelley*, 827 So.2d 936, 941 n. 4 (Fla. 2002).

---

[11] The plaintiff only alleges that the mass of defendants acted with malice. DE 1 para. 414.

Thus, the plaintiff has no state tort cause of action for the alleged release of her DPPA protected information.

Even if the plaintiff had such tort rights, she has failed to make a crucial allegation. Florida law requires that an invasion of privacy claim must allege facts that demonstrate that the protected information was substantially certain to be publicly disclosed. *Williams v. City of Mineola,* 575 So.2d 683, 689 (Fla. 5th DCA 1991) (no invasion of privacy claim where information obtained by numerous law enforcement officers but not substantially certain to be shared with public at large). There are no such allegations in the complaint. Therefore, it is insufficient as a matter of Florida law.

Therefore, the court should dismiss count 5 against Defendants Jones and Brierton.

## CONCLUSION

For these reasons the court should dismiss the action against the defendants with prejudice.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

s/ *Jason Vail*

Jason Vail
Florida Bar no. 298824
Assistant Attorney General

Blaine H. Winship
Assistant Attorney General
Florida Bar no. 356913

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300

Counsel for Defendants Jones,
Bailey and Brierton

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to counsel of

record through use of the Court's CM/ECF system on February 25, 2013.

s/ Jason Vail