UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No.: 9:12-cv-81406-DMM

DONNA JANE WATTS,

    Plaintiff,

v.

CITY OF PALM BEACH GARDENS, et al.

    Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS ROSS, BONAGURA, FUSSEL, TROCAN, KOHL, HUMPHREY, AND DOWDY'S MOTION TO DISMISS, MOTION FOR A MORE DEFINITE STATEMENT, AND MOTION TO STRIKE**

Plaintiff, Donna Jane Watts, by and through her undersigned counsel, files Plaintiff's Response to Defendants Michael Ross (D.E. 522), Vincent Bonagura (D.E. 523), Curtis Fussel (D.E. 524), Wayne Trocan (D.E. 525), Robert Lee Kohl (D.E. 526), Cedric Humphrey (D.E. 527), and Bill Dowdy's (D.E. 528) Motion to Dismiss, Motion for a More Definite State, and Motion to Strike Portion of the Amended Complaint, and in support thereof states:

**INTRODUCTION**

This case involves the constitutionality and interpretation of the Driver Privacy Protection Act (DPPA), 18 U.S.C. §2721, *et seq.*, which places significant restrictions on the disclosure and use of an individual's personal information contained in motor vehicle records. The DPPA was enacted in response to a rash of crimes committed by people who obtained personal information concerning their victims from state motor vehicle records.

As a result of the lax policies governing D.A.V.I.D. access that were implemented under Jones, Bailey, and Lambert more than 88 law enforcement officers from 25 different agencies

obtained the personal information of plaintiff Donna Jane Watts a total of more than 200 times; internal investigations have already determined that there was no law enforcement purpose or no official purpose for 36 of those law enforcement officers to obtain Watts' personal information. During the same period, Watts was harassed by telephone and in person, and was threatened on the Internet. Watts is still awaiting a complete D.A.V.I.D. report from D.H.S.M.V., under the direction of Defendant Jones, as to whom has accessed her information throughout 2012.

Watts' Amended Complaint asserts claims against Ross under the DPPA, §1983 and state law claims. Defendants Michael Ross (D.E. 522), Vincent Bonagura (D.E. 523), Curtis Fussel (D.E. 524), Wayne Trocan (D.E. 525), Robert Lee Kohl (D.E. 526), Cedric Humphrey (D.E. 527), and Bill Dowdy's (D.E. 528)  ("Moving Defendants") have moved to dismiss, strike, and/or sever the claims on five primary grounds.

First, Moving Defendants urge that this Court dismiss the Amended Complaint because it violates Rule 8. But the length of Plaintiff's Amended Complaint only underscores the magnitude of the unlawful access of her private information throughout the state of Florida by the named defendants and the policies in place that made the unlawful access possible.

Second, Moving Defendants argue that a driver's personal information is not a "thing in commerce" subject to regulation under Congress' Commerce Clause power when it is *improperly* obtained by a law enforcement officer under its police power.  However, this argument fails because the Supreme Court has already held that drivers' personal information is a "thing in commerce" even when it is disclosed only to in-state law enforcement officers for matters related to interstate motoring. Therefore, the Court must reject Moving Defendants' as-applied Commerce Clause challenge to the DPPA.

Third, Moving Defendants argue that Plaintiff's Complaint violates Federal Rule of Civil Procedure 12(f), which states a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. However, all portions referenced by Moving Defendants in the Complaint are at the crux of the controversy at hand. Furthermore, a motion to strike is a drastic remedy that is generally disfavored by the courts.

Fourth, Moving Defendants argues that because Plaintiff's Complaint improperly joins defendants under Federal Rule of Civil Procedure 20(a)(2) in this case, severance of claims against Moving Defendants is proper. However, Watts satisfies the requirements of Federal Rule of Civil Procedure 20(a)(2) because Moving Defendants' alleged actions in conjunction with Co-Defendants alleged acts gave way to Watts' right of relief.

Finally, Moving Defendants argue that Watts has not stated a tort claim under state law for her invasion of privacy. But, Plaintiff has alleged all of the required elements in her intrusion-upon-seclusion for invasion of her privacy. Watts has alleged a repeated intrusion into her personal affairs and information (e.g., her address and photo), which is highly offensive, regarding matters where she has a reasonable expectation of privacy (established through *Fed. Labor Relations Authority* and DPPA).

**ARGUMENT**

I.   **Motion to Dismiss Standard**

The Federal Rules of Civil Procedure require merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2012). To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as

3

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and that recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal citation and quotation omitted). A complaint states a plausible claim for relief if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 665.

For purposes of a motion to dismiss, the plaintiff's factual allegations must be treated as true, as well as all reasonable inferences arising from the facts as alleged. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *See Braden v. Wal-Mart Stores*, 588 F.3d 585, 594-95 (8th Cir. 2009) (noting that *Twombly* and *Iqbal* do not change the requirement that the district court draw inferences in favor of the non-moving party).

### II. Watts Claims Against Moving Defendants are Properly Pled

Watts sufficiently pled her claims against Moving Defendants in their individual capacity.

#### A. A Well-Pled Complaint Containing Multiple Defendants Does Not Create a Shotgun Pleading

Plaintiff's complaint is long. It is seventy (70) pages in length, contains 389 paragraphs, and 104 named defendants. However, the length of Plaintiff's Amended Complaint only underscores the magnitude of the unlawful access of her private information throughout the state of Florida by the named defendants and the policies in place that made the unlawful access possible. With each click of a mouse, Plaintiff's personal and highly restricted information was transmitted throughout the state of Florida – information that cannot be "returned."

In response to this Court's Order and realizing the difficulty the Complaint poses due to both the length of the complaint and the number of defendants, Plaintiff divided the Amended Complaint into five parts. The first part is the introduction (¶¶ 1-2). The second part provides the nature of the claims (¶¶ 3-7). The third part is the name and classification of the parties (¶¶ 8 - 119), it defines the individual defendants (¶ 39), the supervisor defendants (¶ 40), the entity defendants (¶ 19), and the database defendants (¶ 46). . The fourth part consists of the factual allegations (¶¶ 120 - 316) including facts as to the harm Plaintiff has suffered and the allegation made as to each defendant. The final part is the four counts (¶¶ 317-380), clearly stating as to whether the count applies to an individual defendant (¶ 39), supervisor defendant (¶ 40), entity defendant (¶ 19), database defendant (¶ 46) or all defendants. *Second Amended Complaint*, D.E. 514. Count I and IV are against all defendants. Count II is against Entity Defendants and Supervisor Defendants. Count III is against the Database Defendants.

A "typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). [1]

Moving Defendants states that Plaintiff fails to identify the particular actions of each Defendant that give rise to each of the alleged claims. Movants Memos, D.E. 522-26, p. 4-6;

---

[1] Moving Defendant cites *PVC Windoors, Inc.* as support. However, *PVC Windoors, Inc.* is inapposite because it characterizes a complaint as a "typical shotgun pleading" if it incorporates all preceding paragraphs into the first Count and incorporates each of the nine succeeding counts into the final Count, such that Count X amounts to an amalgamation of all counts of the complaint. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 n. 4 (11th Cir. 2010).

D.E. 528, p. 4-6; D.E. 527, p. 5.  This is simply untrue because claims stated in Counts I and IV, which reference Individual Defendants (i.e., a term defined in ¶ 39 of the Amended Complaint) and Counts II, which reference Supervisor Defendants, include the Moving Defendants, if they are supervisors. *Amended Complaint*, D.E. 514, ¶ 40. Moving Defendants are in a position to ascertain each factual allegation and relevant claims.

### B.  The DPPA is constitutional as applied.

Two recent cases in the United States District Court for the Northern District of Florida recently denied a similar constitutional challenge to the DPPA. The Honorable Walker stated that,

> "[i]nasmuch as the Supreme Court has already determined that the DPPA passes constitutional muster, this Court declines Defendant City of Gainesville's invitation to excise instances where drivers' information is misappropriated for individual use as opposed to instances in which such information is sold or released. *See id.* (rejecting respondents' invitation "to excise individual applications of a concededly valid statutory scheme")."

*Arce v. City of Gainesville,* DE 24, 1:13cv00137-MW/GRJ Northern District of Florida, rendered September 9, 2013 (Exhibit 1); *Zittel v. City of Gainesville,* DE 26, 1:13-cv-0138-MW/GRJ, Northern District of Florida, rendered September 9, 2013 (Exhibit 2).

The Court further stated that:

> *Reno* is controlling and the Supreme Court has not receded from its reasoning. While the Supreme Court recently addressed the scope of Congress' authority under to the Commerce Clause in *National Federation of Independent Business v. Sebelius*, its analysis does not call *Reno* into question. *Senne v. Village of Palatine, III.*, 695 F.3d 617, 620 (7th Cir. 2012) (stating, on motion to stay mandate, that *Reno* "seems unaffected" by *Sebelius* because the facts were distinguishable as the government was attempting to force individuals or states into the market). *See generally, Nat'l Fed. of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012).

*Id.* at 3.

   1. **Drivers' personal information is a "thing in commerce" even when it is improperly obtained by police officers.**

6

Article I, §8 of the Constitution gives Congress the power to regulate interstate commerce. Congress may regulate three broad categories of activity under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *E.g.*, *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). In *Reno v. Condon*[2], the Supreme Court held that the DPPA is a proper exercise of Congress' authority to regulate interstate commerce under the Commerce Clause because the information that the DPPA regulates is a "thing in interstate commerce." 528 U.S. 141, 148 (2000). The crux of Moving Defendants' Commerce Clause argument is that the *Reno* court's holding does not apply because driver information, that is improperly obtained by a law enforcement officer for a supposedly non-commercial purpose, should only be addressed by *state* law. See Movants' Memos, D.E. 585-589, p. 8-11. However, as the Supreme Court explained:

> The motor vehicle information which the States have historically sold is used by insurers, manufacturers, direct marketers, and others engaged in interstate commerce to contact drivers with customized solicitations. *The information is also used in the stream of commerce by various public* and private *entities for matters related to interstate motoring*. Because drivers 'information is, in this context, an article of commerce, its sale or release into the interstate stream of business is sufficient to support congressional regulation.

*Id.* at 148 (emphasis supplied). The "context" refers to *both* the sale of driver information to private parties and its use by public entities for matters relating to interstate motoring. Moving Defendants' reading of *Reno* misinterprets the second sentence quoted above. *See Senne v. Village of Palatine, Ill.*, 695 F.3d 617, 620 (7th Cir. 2012) ("Notably, *Reno* does not appear to rely on the *sale* of any information. Instead, it identifies the information that the state possesses and 'release[s]' into interstate commerce as 'an article of commerce.'" [emphasis in original]).[3] Based on *Reno*, this Court must reject Moving Defendants' Commerce Clause challenge to the DPPA.

---

[2] Because *Reno* controls the outcome of this case, *Lopez*, and *United States v. Morrison*, 529 U.S. 598 (2000), none of which involve "things" in interstate commerce—are inapposite.

The Supreme Court's opinion in *Maracich* represents a strong endorsement for the general structure of privacy protecting statutes: blanket prohibitions on use of sensitive information, with narrow, targeted exceptions for permissible uses. *Maracich v. Spears,* 133 S. Ct. 2191 (2013). When interpreting these statutes, the Court made clear that exceptions must be explicit and should not be read to the broadest extent allowed by the text, but rather should follow Congressional intent. Even if a user has an upstream permissible purpose for use of private information that does not insulate the user from liability against downstream inappropriate uses. "[E]ven if an initial request was proper, a later use may be a violation." *Id*. at 2214. In the instant case, Moving Defendants, although law enforcement personnel, inappropriately access Plaintiff's personal and highly restricted information.

Finally, the Plaintiff's cause of actions for damages, including punitive damages, pursuant to 18 U.S.C. §2724 should not be dismissed as the law was clearly established at the ime that Moving Defendants improperly obtained Plaintiff's information, as discussed *infra*, and the Amended Complaint establishes that Moving Defendants conduct was willful or reckless, as discussed *supra*.

## C. Count II, Plaintiff's Section 1983 Claim, is Based On the DPPA Violations, and Supervisor Defendants Are Vicariously Liable for Plaintiff's Harm

The DPPA provides Watts a reasonable expectation of privacy. *Collier v. Dickinson*, 477 F. 3d 1306, 1312 (11th Cir. 2007) (statutory right to privacy in motor vehicles record information is clearly established in the DPPA and may be enforced both directly and under Section 1983). (It is settled that "the § 1983 remedy broadly encompasses violations of *federal statutory* as well as constitutional law." *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)

8

(emphasis supplied). Count II of the Second Amended Complaint alleges that the DPPA forms a statutory right to privacy enforceable under §1983.

Moving Defendants state that Count II of Plaintiff's Second Amended Complaint "alleges that the DPPA establishes that obtaining a driver's personal information without a legitimate purpose constitutes an illegal search under the Fourth and Fourteenth Amendments of the U.S. Constitution (Doc. 514 ¶2)." It does not. The Fourth Amendment is not referenced in the Second Amended Complaint. Count II of the Second Amended Complaint alleges that the DPPA forms a statutory right to privacy enforceable under §1983 and as a result Supervisor and Entity Defendants may be held vicariously liable for their failure to monitor and enforce the rules for DAVID. Second Amended Complaint D.E. 514, ¶ 341. Plaintiff further alleges that "the Defendant Supervisors of law enforcement personnel, up to and including the Chief of Police, Sheriff, and Mayor, in each of the Defendant Entities, are liable in their individual capacities for their failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the private driver's license information of citizens, including Plaintiff, without a proper, lawful, permissible, justifiable purpose for doing so." *Id*. at 344.

An adoption by this Court to apply traditional vicarious liability principles is appropriate since there is no specific language in the statute regarding the imposition of vicarious liability based on apparent authority, it must be considered whether an apparent authority theory is consistent with Congress's intent behind the DPPA. *See, e.g., Quick v. Peoples Banks Banks of Cullman County*, 993 F.2d 793 (11th Cir. 193) (RICO); *United States v. O'Connell,* 890 F.2d 563 (1st Cir.1989) (False Claims Act). In *Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961, 965 (6th Cir.1998), the Sixth Circuit held that vicarious liability may be imposed for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1861, *et. seq. Jones* is instructive because

9

much like the DPPA, the FCRA is designed to protect an individuals' personal information. *See Jones,* 144 F.3d 961, 965 ("Protecting consumers from the improper use of credit reports is an underlying policy of the FCRA.").

In addition, employers and supervisors are in a better position to prevent the access of an individual's private information by the use of internal safeguards. The *Jones* Court, in analyzing whether the FRCA imposes vicarious liability stated:

> [i]n the absence of specific language regarding the imposition of vicarious liability based on apparent authority, we must consider whether an apparent authority theory is consistent with Congress's intent behind the FCRA. Protecting consumers from the improper use of credit reports is an underlying policy of the FCRA. An apparent authority theory is in keeping with the FCRA's underlying deterrent purpose because employers are in a better position to protect consumers by use of internal safeguards. *See Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 972 (4th Cir.1987) (affirming an employer's liability under the FCRA for employee's wrongful actions where employee-agent acted with apparent authority in improperly obtaining a credit report); *see also* [*Hydrolevel* ], 456 U.S. at 572–73 (finding an apparent authority rule consistent with the statutory goal of deterring antitrust violations); *In re Atlantic Fin. Mgmt., Inc.,* 784 F.2d 29, 32 (1st Cir.1996) (noting in the context of interpreting a securities statute that "imposing [apparent authority] ... liability will encourage corporate officials to prevent unauthorized (but 'apparently authorized') misrepresentations, thereby helping to achieve an important ... purpose [of the statute]"); *Petro–Tech, Inc. v. Western Co. of No. Am.,* 824 F.2d 1349, 1356 (3d Cir.1987) (noting applicability of common law doctrines in application of federal statutes when common law principles advance the goals of the particular federal statute). Because application of the apparent authority doctrine advances the FCRA's goals and produces no inconsistencies with other FCRA provisions, we conclude that such a theory of liability is an appropriately operative theory of liability under the statute.

*Jones,* 144 F.3d at 965–66

Thus, Count II of Plaintiff's Second Amended Complaint should not be dismissed as the Eleventh Circuit has previously held that the DPPA may be enforced both directly and under Section 1983. And, the Supervisor and Entity Defendants are in the best position to change the custom and policy that is currently in place and may be held vicariously liable for their past acts.

10

### D. Plaintiff's Complaint does not Violate Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) states that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike is a drastic remedy that is disfavored by the courts. *Agan v. Katzman & Korr, P.A.*, 328 F. Supp. 2d 1363, 1367 (S.D. Fla. 2004) (citing *Thompson v. Kindred Nursing Centers East, LLC,* 211 F.Supp.2d 1345, 1348 (M.D.Fla.2002)). Motions to strike are usually denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Agan,* 328 F. Supp. 2d at 1367.

Moving Defendants states that portions of the Amended Complaint violate Fed. R. Civ. P. 12(f).  Movant's Memo, D.E. 522-26, p. 18; D.E. 528 p. 18; D.E. 527, p.20; . However, all portions referenced in the Amended Complaint are at the crux of the controversy at hand, namely that because Plaintiff, a police officer, lawfully stopped another police officer in a traffic stop, she became subject to constant harassment by police officers who accessed her private information using D.A.V.I.D., violating her federal, civil and privacy rights in the process.  *See Second Amended Complaint*, D.E. 514, ¶¶ 48, 55, 57-59, 77, 120-127, 141-167, 173, 175, 219, 221-23, 225-26, 231-32, 285, 287 – 293. Thus, because the portions cited are not redundant, immaterial, impertinent, or scandalous, the Court should not strike them from the Plaintiff's Amended Complaint.

### E. Plaintiff's Complaint Properly Join Defendants under Federal Rule of Civil Procedure 20(a)(2)

Under Federal Rule of Civil Procedure 20(a)(2), defendants may be joined in one action as defendants if "(A) any right to relief is asserted against them jointly, severally, *or* in the alternative with respect to or arising out of the same transaction, occurrence, or series of

11

transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In determining whether a court will exercise its discretion to sever under Rule 20, the court should examine whether separate trials would prevent delay or prejudice. *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1325 (11th Cir.2000), *overruled on other grounds by Manders v. Lee,* 338 F.3d 1304 (11th Cir.2003) (emphasis added). The transactional test requires that, to be joined, parties must assert rights, or have rights asserted against them, that arise from related activities—a transaction or an occurrence or a series of such. "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule." *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974). The Courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure 2d § 1653.

Furthermore, Moving Defendants case on point, *Bubble Gum Products, LLC v. Doe,* 2012 WL 6755274 (S.D. Fl. 2012), was a copyright infringement action by Plaintiff Bubble Gum Productions, LLC against Defendants. Bubble Gum alleged that Defendants illegally reproduced and shared the video using BitTorrent file sharing protocol and, as such, they were properly joined. Defendants maintain that the file sharing protocol does not justify joinder. The Court ruled that joinder was not proper because " . . . the users themselves are not choosing to engage in file sharing with other particular users; rather, the BitTorrent protocol is determining which users to connect to in order to obtain the additional pieces of a file . . . users can walk away from

their computers and as long as the computer is still on, the filing sharing process continues for an indefinite period of time among an undefined number of users."

Here, unlike in *Bubble Gum Productions*, the Moving Defendant access to D.A.V.I.D. does not concern the downloading and sharing a file by anonymous defendants or where the Plaintiff's highly-restricted information follows "BitTorrent protocol" and the computer by itself, without the assistance of users, improperly downloads information.  The D.A.V.I.D system is under the control of the Database Defendants, who are also co-defendants, and Moving Defendants employer also exercise control over whom accesses the system.  Moving Defendants alleged actions gave way to Plaintiff's right of relief, which is being asserted against Moving Defendants, their employer, Jones, and Bailey jointly and severally. *See Second Amended Complaint*, D.E. 541, ¶ .  Thus, Plaintiff has properly joined defendants, satisfying the requirements of Fed. R. Civ. P. 20(a)(2). Therefore, the Court should not sever the claims against Moving Defendants.

### F. Count IV of the Plaintiff's Complaint State a Valid Cause of Action for Tort Damages for Violation of Florida Common Law

#### 1. Count Four of Plaintiff's Complaint States a Cause of Action for Tort Damages for the Invasion of Privacy under Florida Common Law, not the Florida Constitution

Florida law recognizes the tort of invasion of privacy, specifically intrusion upon seclusion, as a valid cause of action. *Oppenheim v. I.C. Systems, Inc.,* 695 F.Supp.2d 1303, 1308 (M.D. Fla. 2010) (citing *Allstate Ins. Co. v. Ginsberg,* 863 So.2d 156, 162 (Fla. 2003) )("Florida recognizes three categories of privacy torts: "(1) appropriation-the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion-physically or electronically intruding into one's private quarters; [and](3) public disclosure of private facts-the dissemination of truthful

13

private information which a reasonable person would find objectionable.'"). Furthermore, "[u]nlike the other privacy torts, a claim for intrusion is actionable, notwithstanding the absence of publication." *Id.* Under Florida law, the tort inclusion upon seclusion requires intrusion "into a 'place' in which there is a reasonable expectation of privacy." *Spilfogel v. Fox Broadcasting Co.,* 433 Fed.Appx. 724, 726, (11th Cir. 2011) (citing *Allstate Ins. Co. v. Ginsberg,* 863 So.2d 156, 162 (Fla.2003) (per curiam). To prove a claim of intrusion upon seclusion, a plaintiff must demonstrate that the intrusion a) is into her private quarters or a place where she had a reasonable expectation of privacy; b) there must be some physical or electronic intrusion into that private quarter or place where she has a reasonable expectation of privacy; and c) the intrusion must be highly offensive to a reasonable person. *Id.*

No physical intrusion is required. Florida law clearly states that an electronic intrusion, such as telephone calls or electronic eavesdropping, i.e., the tape recording of telephone conversations without all speakers' consent and the surreptitious recording of face-to-face conversations, may be sufficient for an actionable intrusion. *Id.*; *Shevin v. Sunbeam Television Corp.*, 351 So. 2d 723 (Fla. 1977).

The second requirement is that the intrusion requires that the intrusion address some matter in which a person has a legitimate expectation of privacy. *Spilfogel v. Fox Broadcasting Co.,* 433 Fed.Appx. at 726. The United States Supreme Court has already determined that an individual has a legitimate expectation of privacy in their home address—information contained in driver's license data. *U.S. Dept. of Defense v. Fed. Labor Relations Authority*, 510 U.S. 487, 489 (1994) (the "disclosure of home addresses of federal civil service employees…would constitute a 'clearly unwarranted invasion' of the employees' personal privacy within the meaning of the Freedom of Information Act"). In so holding, the Supreme Court reversed the

Court of Appeals' decision requiring disclosure of a federal employee's home addresses under FOIA, stating "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *Id.* at 500. The privacy interest in personal information such as addresses and phone numbers is "far from insignificant." *Id.* at 501.

Moreover, the DPPA (enacted in 1994) itself creates a legitimate expectation of privacy in one's driver's license data. The DPPA expressly protects the information that Moving Defendants argues is not private, providing that "[a] State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity: (1)personal information… about any individual obtained by the department in connection with a motor vehicle record…; or (2) highly restricted personal information…without the express consent of the person to whom such information applies…" 18 U.S.C. §2721 (a)(1), (2). Under the DPPA, "personal information" includes photos, driver's license numbers and addresses. Furthermore, the DPPA categorizes driver's license photographs as "*highly restricted personal information.*" 18 U.S.C. § 2725 (3) & (4) (emphasis added).

The final element is that the intrusion must be highly offensive or "objectionable" to a reasonable person. *Oppenheim v. I.C. Systems, Inc.,* 695 F.Supp.2d at 1308.

Count IV of Plaintiff's Amended Complaint clearly sets out all of the required elements in Plaintiff's intrusion-upon-seclusion claim under Florida law. *Second Amended Complaint*, D.E. 514, p. 68. Plaintiff has alleged a repeated intrusion into her personal affairs and information (e.g., her address and photo), which is highly offensive, regarding matters where she has a reasonable expectation of privacy (established through *Fed. Labor Relations Authority* and

15

DPPA). Moving Defendants mischaracterized Plaintiff's claim for the tort of invasion of privacy in Count IV of her Amended Complaint, stating that Plaintiff sought to recover monetary damages under Article I, Section 23 of the Florida Constitution. Movants Memos, D.E. 522-26, p.20; D.E. 528 p. 20; D.E. 527, p.22. This is untrue because Plaintiff only refers to Article I, Section 23 in the Amended Complaint's introduction. *Second Amended Complaint*, D.E. 514, p. 4.

Plaintiff has properly pled violations of her right to privacy under Florida law and Moving Defendants should be forced to defend such claims and be accountable for the damage that has resulted from their intentional invasion to Plaintiffs' rights to privacy.

Contrary to Moving Defendants belief, an action for tort damages has long existed for the tort of invasion of privacy. *Allstate Ins. Co. v. Ginsberg*, 351 F.3d 473, 478 (11th Cir. 2003) (citing *Cason v. Baskin,* 20 So.2d 243, 250) (1944) ("[There is a] in fact a right to privacy in Florida distinct in and of itself and not merely incidental to some other recognized right, and for breach of which an action for damages will lie.") (citations omitted). In *Neely v. Wells Fargo Financial, Inc*., the court reinforced this principle in relation to a case specifically dealing with tort of the intrusion upon seclusion. *Neeley v. Wells Fargo Fin., Inc*., 2012 WL 5949106, *3 (M.D. Fla. 2012). Here, under Florida common law, because Plaintiff has stated a valid action for the tort of intrusion upon seclusion, she also has a valid claim for tort damages.

### 2. Moving Defendants Are Not Entitled to Statutory Immunity for a Claim of Tort of Invasion of Privacy Based on Established Law

Florida Statute § 768.28(9)(a) states in relevant part that "[n]o officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or

omission of action *in the scope of her or his employment or function*[.]" *Fla. Stat.* § 768.28(9)(a) (emphasis added).  Moving Defendants states that dismissal of Plaintiff's tort of the invasion of privacy is appropriate under Florida Statute § 768.28(9)(a).  Movants Memos, D.E. 522-26, p.20; D.E. 528 p. 20; D.E. 527, p.23.  However, Plaintiff has made enough allegations in her Amended Complaint to maintain a suit against the Moving Defendants. The Amended Complaint, D.E. 514, ¶¶ 247, 249, properly allege the actions regarding the D.AV.I.D. Database by Moving Defendants. Furthermore, the events alleged in the Amended Complaint were not only intentional on the part of the individual law enforcement personnel, but also unreasonable.

Under a motion-to-dismiss standard, Watts has sufficiently pled facts that would refute application of statutory immunity against Moving Defendants. It is therefore premature for the Court to make any statutory immunity determination before discovery occurs. Where Plaintiff has pled a tort of invasion of privacy claim, the vast majority of statutory immunity defenses adjudicated prior to trial are decided at the summary judgment stage rather than on motions to dismiss.

### G.  Plaintiff Satisfies Standard for Seeking Permanent Injunctive Relief

To obtain a permanent injunctive relief, a plaintiff must establish "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *L.A. v. Lyons*, 461 U.S. 95, 103 (U.S. 1983).  The Supreme Court recognized that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," unless analysis of future harm "takes [court] into the area of speculation and conjecture." *Rizzo v. Goode,* 423 U.S. 362, 372 (1976) (citing *O'Shea v. Littleton*, 414 U.S. 488, 496-97(1974)). In *Rizzo*, the Supreme Court held permanent injunctive relief to be inappropriate in a class action where "individual respondents' claim to 'real and immediate' injury rest[ed] not upon what the

named petitioners might do to them in the future . . . but upon what one of a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental disciplinary procedures." *Rizzo*, 423 U.S. at 372.

Here, unlike in *Rizzo*, Plaintiff seeks a permanent injunction to prevent what the Moving Defendants may do to her in the future based on his past conduct, namely viewing her private information in violation of the DPPA and infringing upon her right of privacy. *Compare id. with Second Amended Complaint*, D.E. 514, p. 68. This analysis of the Moving Defendant past conduct indubitably bears on whether there is a real and immediate threat of repeated injury to Watts. *See Rizzo*, 423 U.S. at 372. Furthermore, the possible future harm that Plaintiff can suffer if the court does not prevent the Moving Defendants from engaging in this illegal conduct is clear, does not take the court into an area of speculation of conjecture, and has no adequate remedy at law. *See id*. Thus, Plaintiff has satisfied the standard for seeking a permanent injunction and this Court should not dismiss her request for a permanent injunction against the Moving Defendants.

## CONCLUSION

For all the foregoing reasons, the Court should deny Moving Defendants motions.

Dated: 7th November 2013

Respectfully submitted,
/s/ Mirta Desir
Mirta Desir (NY 4805057 / FL 90103)
Desir & Associates
P.O. Box 1052
West Palm Beach, Florida 33402
T: 800.982.5280 ext. 2
E: mdesir@desirlaw.com ; mdesir@gmail.com

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that on this 7th day of November 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Mirta Desir_____